## Jordan v. Commonwealth.

(Decided October 7, 1930.)

C. F. SEE, JR., for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Roy Jordan appeals from a judgment convicting him of malicious striking and wounding with a deadly weapon with intent to kill, and fixing his punishment at five years' imprisonment in the penitentiary.

The assault was committed on Hazel Jordan, appellant's wife. She testified that appellant pulled some of her hair out, and struck her once over the head with a broomstick. At that time she was at home in bed. He also struck her with a razor strap across the leg. At the same time he struck her across the hips with a large whip used to drive horses with, and whipped her hard. In addition to this, he whipped her with a belt, mostly on her legs and struck her with a bridle with a buckle on it, and thinks that he cut a gash on her knee. Besides all this, he struck her with some small clubs about as large as a man's finger and a yard long. He put two of them together. Her flesh was cut, and she took splinters out of her back. A day or two later she went to the home of some neighbors and remained there three days and two nights. After that she went to the home of her people and remained in bed for about three weeks. She also testified that appellant had threatened her life a number of times, and that she was induced to convey him her property through fear. Appellant also said to her that if she would not prosecute him the deed would

be null and void, but if she did, the deed would be good, and he could hold it. As to the character and extent of her injuries the prosecuting witness was corroborated by Mrs. Mart Young, who testified that she had bruise marks and cut places on her that looked as if she had been whipped with switches or something or other. There were so many marks or cut places from her hips to her knees that she could not count them. Mrs. Young's husband, Mart Young, also testified that there were red marks all over the prosecuting witness, and that she looked like she had been whipped with a switch. The marks were red and looked as if a man had burned her body. Bill Savage testified that he saw the prosecuting witness, that her left leg from her knee down looked like jelly, that her hips were lacerated considerably, her right eye was black, and down on her back there was a place about an inch or an inch and a half long that looked like it had been cut with some kind of dull instrument. He also noticed that her right hand was considerably swollen. William Carter, who also saw the prosecuting witness, said that when Mrs. Young took the bandage off her left leg was swollen and her right leg was all green and purple. On the other hand, appellant denied that he struck his wife with a razor strap, but said that it must have been a hamstring. It might have been an inch wide. He never hit her with a bridle or anything like that. He did hit her with a willow switch something like two and one-half feet long. He cut the switch to whip her with, and also admitted that he kicked her on the leg. His only excuse was that his wife was inclined to flirt with other men, but the facts detailed by him and his son, who testified in his behalf, were wholly insufficient to establish the charge.

There is no merit in the contention that the indictment failed to charge that the striking and wounding was with deadly weapons. It not only specifies the weapons employed, but adds, ''and all of which were deadly weapons.'' Nor did the court err in overruling defendant's motion to require the commonwealth to state which of the instruments mentioned in the indictment were deadly weapons. The indictment having alleged that all of the weapons were deadly weapons, there was no necessity for stating which of them was a deadly weapon.

After the jury was impaneled, appellant moved the court to strike from the panel all those jurors who had sworn they had formed an opinion as to the guilt or innocence of appellant so that he would not have to use his peremptory. The bill of exceptions discloses that the jurors challenged stated in their examination that they could lay aside and disregard any opinion they had, and try the case solely on the law that the court would give, and the evidence they would receive from the witness stand. Whether, if reviewable, we would be inclined to hold that the action of the trial court was improper, we need not determine. It is sufficient to say that, under section 281, Criminal Code of Practice, providing that "the decisions of the court upon challenges to the panel, and for cause, or upon motions to set aside an indictment, shall not be subject to exception," the ruling of the trial court is not reviewable. Harris v. Commonwealth, 163 Ky. 781, 174 S. W. 476; Childers v. Commonwealth, 161 Ky. 440, 171 S. W. 149; in which the Code provision has been upheld and applied.

The further point is made that the court erred in permitting appellant's wife to testify regarding the deed which she executed to appellant. It is argued that, although the wife may testify against the husband where the husband commits or attempts to commit a crime against the person of the wife, the testimony is confined to the crime itself, and should not include other matters. It is true that in the case of Commonwealth v. Sapp, 90 Ky. 580, 14 S. W. 834, 835, 12 Ky. Law Rep. 484, 29 Am. St. Rep. 405, the court used the language, "where however, violence has been committed on the person of the wife by the husband, she is competent to prove such violence," but it did not intend to limit her testimony solely to such acts of violence. If the evidence of the prosecuting witness be true, she was induced to execute the deed through fear of personal violence and was told that if she would not prosecute the accused he would return the deed. Where a situation like this is presented, we conclude that the wife is not only competent to testify to the acts of violence, but like any other witness may testify to any acts showing a motive for the crime or an effort on the part of the accused to suppress the prosecution.

In addition to an instruction on assault and battery, the court instructed the jury as follows:

"A. If the jury believe from the evidence that the horsewhip, bridle reins with bit, razor strap, broomstick or clubs with which the defendant, Roy Jordan, struck and wounded Hazel Jordan, if he did so strike and wound her with either of them, were, either of them, such instruments as were reasonably calculated to produce death, when used by a person of defendant's physical strength and in the manner in which they or either of them were used by him on the occasion mentioned in the indictment, they will, in that event, be authorized to find that such broomstick, clubs, razor strap, horse reins with bit, or either are deadly weapons within the meaning of the law."

"1. If the jury shall believe from the evidence beyond a reasonable doubt, that the defendant, Roy Jordan, in Lawrence County, Kentucky, before the finding of the indictment herein, unlawfully, wilfully, maliciously and feloniously, struck Hazel Jordan with a horsewhip, bridle reins with bit, razor strap, broomstick or clubs, and that either of said instruments were deadly weapons, as defined in instruction 'A,' and that he struck her with the intent to kill her but did not kill her, then you should find the defendant guilty and fix his punishment by confinement in the penitentiary for not less than one year and not more than five years in your discretion."

It will be observed that under these instructions the question, whether the horse whip, bridle reins with bit, razor strap, broomstick, or clubs, were deadly weapons, was submitted in the disjunctive, coupled with the provision, "and that either of said instruments were deadly weapons." That being true, the jury were authorized to find appellant guilty if any one of the weapons named was a deadly weapon, although they may not have believed beyond reasonable doubt that he struck her with that particular weapon. In a case like this where the accused is charged with employing several weapons, and the character of the weapons is a question for the jury, the instruction should make it plain that the jury cannot

454

convict for a felony unless they believe beyond a reasonable doubt that the particular weapon with which the striking was done was a deadly weapon. While it is clear that appellant was guilty of most brutal assault on his wife, the question whether the weapons employed were deadly, and whether he intended to kill his wife, in view of the fact that she was ill in bed and completely at his mercy, and he could have killed her if he desired, is attended with so much doubt that there is no escape from the conclusion that the error in the instructions was of a prejudicial character.

There is another phase of the case that must not be overlooked. Whether the instrument or thing with which the striking is done is a deadly weapon is, of course, a question for the jury. This does not mean, however, that the jury may find any instrument or object a deadly weapon, regardless of its character and size, and the manner of its use. Therefore, unless the name of the weapon employed is such a true index of its character and size as to authorize the jury to find it to be a deadly weapon, it should be exhibited to the jury, or described in such a way as to enable the jury to pass on the question. Under this rule a jury would hardly be justified in concluding that an ordinary razor strap, without any evidence whatever as to its character or size, was in fact a deadly weapon.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.